BRYAN vs. MUNDY, ADM'R OF FELIX MUNDY.

1. In presenting a judgment for allowance against an estate, the same notice is required, as in the presentation of other demands; and if it be not given, the allowance is unauthorized and illegal, and may, at any time, be set aside, on the application of the administrator.

Bryan vs. Mundy, adm'r of Felix Mundy.

## APPEAL from Washington Circuit Court.

JOHNSON, for appellant.

It appears from the judgment of the circuit court, that what the court calls "the allowance," was set aside, upon the ground that the administrator had no notice. It is insisted, that when judgments, obtained against the deceased in his life, and filed in the county court, the administrator is not entitled to notice. By reference to 4th article of the administration law, section 5, we have the requisites to be stated in the notice to the administrator, among which is "a copy of the instrument of writing or account upon which the claim is founded." This section not only prescribes the requisites of the notice, but limits the classes of claims where the notice is required. These classes, 1st, those found on instruments of writing. 2nd. Those founded on account. Actions pending against the deceased at the time of his death, are considered legally exhibited against the estate at the time the action is revived against the administrator. (Sec. 3.) There are also two other cases. 1st. Judgments rendered in a court of record against the administrator, establishing the demand, therein preference, to the county court, (sec. 7;) and, 2nd, judgments rendered against the deceased in his life time. Now, in all these cases, where a copy of the instrument of writing or account is to accompany and form a part of the notice, the county court both allows and classes the claim (secs. 8 and 22.) In those cases where judgments of courts of record are filed, whether the suit was revived against, or originally commenced against the administrator, the county court does not allow, but simply class the claim, (sec. 22;) (compare the words courts of record, in this section, with sec. 7.) In those cases, where the judgment was rendered against the deceased in his life time, the county courts have nothing to do; the law classes the claim in the fourth class, (sec. 1,) and the county clerk is simply required, when it is filed, to enter it in his book of abstracts; (sec. 21.) When, therefore, a judgment has been rendered against the deceased in his life time, it needs no action in the county court to impart any greater validity to it; it required the highest evidence of indebtedness from the court rendering it; the county court could give it no greater dignity; and the law has put it in a class which the county court cannot alter. If the county court have nothing to do, either in allowing or classing a judgment rendered against the deceased in his life time, how can the administrator claim a notice to come in court when the judgment is simply? For what purpose would he come in the county court? We have seen that the county court has no authority either to allow or class it; it results from this, that the administrator could not contest it. Can it be said that the administrator is entitled to the oath of the claimants? Who could require it? It will be seen that the county court can only require the oath "that the claimants have given to the estate all credits and off setts, &c.," in those cases only, where there is an application at their hands, either for allowance or classification, or both, (sec. 10.) As the county court neither allows nor classes judgments rendered against the deceased in his life time, they have no right to require an affidavit.

There is no danger, but that the estate can get all credits and off-setts to which it is entitled. It is presumed, that when the judgment was rendered against the debtor, he obtained credit for all payments and off-setts to which he was entitled. If he did not, he should have appealed. If payments have been made since the judgment, by the debtor, they will generally appear, either by receipt, or by endorsement on the judgment or execution. The administrator can claim these credits when he comes to pay the judgment, and if the creditor refuses to allow them, all that he has to do, is to go to the court where the judgment was rendered, and by motion in the nature of a writ of "credita qureala," get the court to order the same to be credited on the judgment by the clerk, and if he wants the oath of the party, he can get in on this motion.

Bryan vs. Mundy, adm'r of Felix Mundy.

FRISSELL, for appellee.

The only question in this case is, whether a judgment rendered against a person in his lifetime can be allowed against his estate after his death, without giving notice to his administrator.

The whole question turns upon the construction of the statute, for it is exclusively a statutory regulation. The act concerning executors and administrators, art. 4, sec. 1, p. 90, provides that "all demands against a deceased person shall be divided into the following classes:

4th. "Judgments rendered against the deceased in his lifetime," &c.

Sec. 2. Provides, "that all demands not thus exhibited within three years, shall be forever barred," &c.

Sec. 3. Provides, that "all actions pending at the time of the decease shall be considered demands legally exhibited from the time of revival," that is, from the time the administrator becomes a party.

Sec. 4. Provides, that all actions commenced against the executor or administrator shall be considered demands legally exhibited against such estate," &c.

Sec. 5th. Provides, that any person may exhibit his demand against such estate by serving upon such executor or administrator a notice in writing stating the nature and amount of his claim, &c., and such claim shall be considered legally exhibited from the time of serving such notice.

Sec. 16th. Gives the estate the benefit of the oath of the persons having demands against the estate.

Sec. 22nd. In the first clause, refers to judgments of the other courts to which the administrator has been a party. Upon the whole matter, it is not seen that any good reason exists why the administrator or executor should not have notice of judgments rendered in the lifetime of the deceased.

BIRCH, J., delivered the opinion of the court.

In the lifetime of Felix Mundy, John G. Bryan obtained a judgment against him before a justice of the peace, made a portion of the money on execution, filed a transcript in the circuit court clerk's office, from which issued a second execution, upon which a small additional sum was made. The defendant subsequently denying, a transcript of this judgment was filed in the county court clerk's office on the 22nd of December, 1847, and the demand classed against his estate at the February term, 1848. Two years after the judgment was thus classed, the administrator of Mundy appeared in the county court and moved to set aside the allowance against his decedent, for reasons which we are to presume were satisfactory, inasmuch as the party complaining then and complaining yet, although causing them to be referred to, has not embodied them in the record by which he has brought the case here. In the circuit court, to which Bryan appealed from the judgment of the county court, the administrator proved by the clerk of the county court that he had never seen any notice to the administrator of Mundy, when the transcript was filed or allowed, and that such notice was not waived in open court.

Bryan vs. Mundy, adm'r of Felix Mundy.

The defendant thereupon, in order to sustain the issue on his part, produced Israel McGready, who testified that as clerk of the circuit court he had made out the transcript offered in evidence; that some 12 months or more before he had prepared it, Dr. Bryan had applied to him to do so, stating that the administrator had been making preparations to settle the debt, without carrying it to the county court. Witness stated that the widow of the deceased had dower in a house and lot purchased by Dr. Bryan (the defendant in this proceeding) under an execution in his favor against the deceased, and that the administrator had proposed that the widow would relinquish her dower, and they would convey to him, if he would give up the debt, and that Dr. Bryan had agreed to do it. He stated at that time that he would wait awhile and see whether the administrator and widow would come up to their promise before he got the transcript. Mr. McGready further stated that he had been connected with the clerk's offices in that county for 18 years, and had lived in the county for 32 years, and that the unvarying practice had been not to give notice to administrators in filing transcripts of judgments against their intestates estates.

The question before us is, did the circuit court do right in affirming the action or proceedings of the county court, rescinding or setting aside the allowance in favor of Bryan, on the ground that the administrator had had no notice.

The first section of the fourth article of the administration law explicitly recognizes "judgments rendered against the deceased in his life time," (as demands "against his estate, and assigns them ordinarily, though not invariably, to the fourth class. By the twelfth section of the same article, it is enacted (peremptorily, it would seem,) that "any person desiring to establish a demand against any estate, shall deliver to the executor or administrator a written notice, containing a copy of the instrument of writing or account on which it is founded, and stating that he will present the same for allowance at the next term of the county court; and by the 14th section it is provided, that the administrator may appear in court and waive the service of any such notice.

It is not perceived in what respect, if any, the legislature has discriminated in favor of establishing a demand evidenced by a judgment against the party during his lifetime, in preference to one that is evidenced by a note or a bond, and there seems to us no sufficient reason why they should have done so. Hence, the 9th and 10th sections unquestionably require that the claimant should take the same oath in respect to every species of demand, for it makes no discrimination in favor of one of this nature, and it would be too absurd to do so. So,

also, the 6th section enacts that "every executor and administrator shall keep a list of all demands thus exhibited, classing them, and make return thereof to the county court every year, at the term at which he is to make settlement." This section evidently contemplates that the administrator will be in court pursuant to notice, or to waive notice, upon the exhibition and allowance of every demand against his decedent, for how, otherwise, could he "keep" a list of the demands exhibited? True, he might go to the clerk just before his settlement and procure such a list. But such a course is neither in fulfilment of the letter or the spirit of the law. It may as well be added that it will have been in vain that the legislature has enacted proper rules for the protection of the estates of the dead, unless the courts hold all parties to their more punctual observance, for our observation upon the bench has abundantly confirmed us that in no branch of the jurisprudence of the State has the "practice" of the courts been more loose and inexcusable than in the allowance of demands on the general settlement of estates.

That the words of the 12th section of the administration act, which require that the written notice to the administrator shall contain "a copy of the instrument of writing or account" upon which the demand is founded, do not technically fall within this case is no sufficient argument when applied to a jurisdiction and a subsequent matter (sec. 15) when the trial is summary and without the form of pleading. A compliance with the spirit and object of the law would have required no ingenuity even, if indeed a compliance with its very letter would not have been quite as practicable as in reference to many other species of demands, which have to pass the same ordeal, and of course are governed by the same requisition. Because the legislature has not always employed apt words wherewith to meet every case that may occur, the courts are not therefore to lose sight of the object which was manifestly in their view, but are to give to the whole enactment such a construction and effect as, if possible, to promote and accomplish the general object which was aimed at. Had that been done in the case before us, by notifying the administrator of Mundy that a demand founded upon an unsatisfied judgment, (reciting a copy of it) would be presented to the county court for classification, (the same thing as allowance,) who can say that the administrator might not have availed himself of an offset, or even of some equitable defence, accruing or developing itself after the rendition of the judgment, and thus have defeated its allowance? Far from supposing or intimating that this would have been done, the whole object of the law seems to contemplate that it may be done; and because no notice was given, and no opportunity thereby afforded the ad-

ministrator to do so, or in any other manner to defend the interests of his intestate's estate, the original classification of the demand was unauthoritative and illegal, and both the county court and the circuit court did right, when the facts were brought to their knowledge, and undenied, to so declare it, and to set aside the allowance, or declare the judgment void, accordingly.

The judgment is therefore affirmed.