THOMAS B. NORTH *et al.*, Guardian, etc., Appellants, *v.* THOMAS A. WALKER, Executor, etc., Respondent.

## May 16, 1876.

1. The executor of a deceased person may, especially with the sanction of the Probate Court, make a valid contract for the extension of the time of payment of a debt owing by decedent, and a contract that, in consideration of the payment of interest by the executor, an extension of time for the payment will be given by the creditor, is valid.

2. There may be circumstances which will render something less than an absolute strict compliance with the requirements of the statutes a sufficient exhibition of a demand for allowance against the estate of deceased.

APPEAL from St. Louis Circuit Court.

*Reversed and final judgment.*

*Davis, Thoroughman & Warren*, for appellants, cited: Wag. Stat. 104, secs. 15, 16, 17, p. 74, sec. 29 ; Coleman *v.* McClure, 47 Barb. 206 ; Cartright *v.* Green, 47 Barb. 47 ; Harrison *v.* Jones, 33 Ala. 258 ; Puckett *v.* James, 2 Humph. 565 ; Cheseman *v.* Kyle, 15 Ohio, 15 ; Herman on Estop. secs. 418–420 ; Wells *v.* Miller, 45 Ill. 33 ; Smarr *v.* McMaster, 35 Mo. 351 ; Kees' Exr. *v.* Kees, 2 Gratt. 128 ; Boyd *v.* Ogelsby, 23 Gratt. 674 ; Williamson *v.* Anthony, 47 Mo. 299 ; Williams on Ex. 1196 ; Tevis *v.* Tevis, 23 Mo. 258 ; Will *v.* Wright, 32 Ia. 451 ; Stiles *v.* Smith, 55 Mo. 368 ; Gansevort *v.* Nelson, 6 Hill, 389 ; Mason *v.* Tiffany, 45 Ill. 392 ; Johnson *v.* Corbett, 11 Paige, 265 ; Flinn *v.* Shackleford, 42 Ala. 202.

*Krum & Madill*, for respondent, cited: 1 Wag. Stat. 86, sec. 19 ; Ib. 102, secs. 2, 5, 6, 8 ; Wiggins *v.* Lovering, Admr., 9 Mo. 262 ; Montelius *et al. v.* Chouteau's Admr., 11 Mo. 237 ; Tevis *v.* Tevis, 23 Mo. 256 ; Richardson, Admr., *v.* Harrison, Admr., 36 Mo. 96.

GANTT, P. J., delivered the opinion of the court.

Appellants sued respondent to the June term, 1872, of the St. Louis Circuit Court, alleging the execution by Isaac Walker, March 14, 1867, of his note for $24,000, three

years after date, with 10 per cent. after maturity; that he executed, also, to secure the note, a deed of trust to one Merry, trustee: that Walker died in October, 1868, leaving a will, of which defendant was executor; that interest on the note was paid up to September 14, 1871; that the sum of $17,226.21 was realized, on September 18, 1872, by the sale of specific security; and plaintiffs ask judgment for the remainder of the note and interest.

The answer ignores the execution of the note; admits the grant of letters; sets up that, within eight days thereafter the executor published notice that such letters had been granted to him, and requiring all persons to present their claims against decedent for allowance on pain of being barred; that the demand upon said note accrued on March 17, 1870, and was not exhibited to the executor, nor suit brought thereon within two years from the day of the publication of the said notice. For a further defence, the executor, setting up the same introductory matters as in the previous answer, alleged that the note accrued March 17, 1870, and was not exhibited to the defendant as executor, nor presented to the Probate Court for allowance, nor was suit brought thereon within three years after the granting of said letters testamentary.

Plaintiffs filed a replication ignoring the publication, admitting that the demand had not been presented to the Probate Court, nor suit brought on it within two years after publication of notice, but alleging that it was exhibited to the executor, as a claim against the estate, within said two years and within two years after the grant of letters testamentary, and that suit was brought upon it in the Circuit Court within three years after the demand accrued.

2. For further replication, plaintiffs, ignoring as aforesaid, alleged that the said claim was exhibited to Thomas A. Walker, executor, etc., within two years after the claim accrued, and within three years after letters granted, and that suit was brought in the Circuit Court within three

years after the demand. or claim arising ,from said note accrued.

3. For further replication they say that, on February 8,. 1870, at the request of T. A. Walker, executor, who agreed to pay therefor 9 per cent., an extension was made,. for one year, of the said note, from March 14–17, 1870.. This agreement was made in writing, and is produced and filed with the reply. That, on March 28, 1871, the note was again extended for one year; this agreement was also in writing, filed with the reply. And plaintiffs set up these agreements in bar of the matters alleged in the answer.

To the third matter set up in the replication defendant demurred, and the court sustained the demurrer on April 13, 1874. Afterwards, at the April term, 1875, the court, on trial, gave judgment for the defendant on the remaining issues. A motion for a new trial was overruled; there was an appeal to the general term, where the judgment was affirmed, and the case comes before us by appeal, the record not having been filed in the office of the clerk of the Supreme Court until December 17, 1875.

By the bill of exceptions it (rather superfluously) appears that the plaintiffs excepted to the sustaining of the demurrer of the defendant to the third matter of the replication. That at the hearing the note was read; that the inventory of the estate of Isaac Walker was read, which, among other things, contained a description of the land at the northeast corner of block 26, of the city of St. Louis, declared to be incumbered by a deed of trust to secure the payment of $24,000. Other pieces of land were mentioned in the inventory, most of them incumbered, but having no discernible connection with the present note or case. The inventory covers several pages.

A payment of interest was made by Thomas A. Walker,. executor of Isaac Walker, deceased, on September 17, 1870, and the note was renewed for one year from March 17, 1870. The payment was shown by a receipt signed by

plaintiffs, not in a representative capacity, but as "Thos. B. North and Samuel T. Adams." Another receipt for interest, dated September 18, 1871, for six months, ending September 17, 1871, and signed in like manner, was shown. Then follow two *unsigned notes or blanks*, dated March 14, 1867, each for $960, payable, one at twenty-four and the other at thirty months after date, to the order of Thomas B. North and Samuel T. Adams, guardians, etc., and then come some unexplained and unsigned memoranda, the meaning of which we can only conjecture. Then comes the agreement, dated February 8, 1870, between these guardians and Thomas A. Walker, executor of Isaac Walker, for the extension of the note for one year from March 14, 1870, at 9 per cent. per annum; then a receipt from Thomas B. North and Samuel T. Adams to Thomas A. Walker, executor of Isaac Walker, dated February 28, 1871, for $1,080, described as semi-annual interest on the principal note of Isaac Walker for $24,000, with an agreement in writing of the same date, signed by Thomas A. Walker, executor of Isaac Walker, for the extension of the note until March, 1872. Then was read the deed of trust by which the property at the corner of Oak and Main streets, in block 26, was conveyed to trustees to secure the payment of this note of $24,000. And Thomas B. North testified that, about four months after the death of Isaac Walker, he exhibited the note in question to Thomas A. Walker, executor, who said he knew all about it, and that it was all right; that he did not know whether it was necessary to present the notes to the Probate Court, but, if it were, he would appear and waive notice. Witness accordingly presented the notes to the Probate Court, the executor waiving all objections. The principal note was not then due. The judge said the claim was valid, but, as it was not due, it was unnecessary to make a formal allowance. The interest notes were paid as they fell due. (It should have been stated that the

12

interest received on the loan, as appeared by the deed of trust, up to 1870, was 8 per cent. only.) In the spring of 1870, at the request of the executor, witness extended the note for one year, at 9 per cent., and the same thing was again done in 1871. On the 24th March, 1870, the executor procured and filed in the Probate Court, at the request of witness, a copy of the deed of trust, together with the agreement for the extension of the note. The property was sold April 18, 1872, realizing the sum credited on the note. The rest is wholly unpaid. But for the solicitation of the executor, who urged witness not to sacrifice the property of the estate, he would have sold the property immediately on the maturity of the note; and but for this solicitation, and the written agreements made and read in evidence, he would have made formal proof of the demand within two years after the death of Walker.

It was admitted that the executor duly published the notice of administration.

Plaintiffs asked the court to declare " that, if it should find from the evidence that Isaac Walker made his promissory note, dated March 14, 1867, due three years after date, secured by the deed read in evidence; that he died in October, 1868; that letters were granted on his estate December 10, 1868, and his executor duly published notice thereof; that on February 8, 1870, the plaintiffs presented said note and deed of trust to the executor as a demand against the estate; that the same were submitted to the Probate Court and allowance thereof not determined, and that plaintiffs and executor made a written agreement extending the time of payment of the note for one year, which was reported to and filed by said executor in the Probate Court, and filed the corresponding receipts also for the payment of interest, and on February 28, 1871, a similar written agreement was made and filed, and also receipts for interest, all of which were approved by the

Probate Court, a certified copy of the deed of trust being also filed in said Probate Court, then said note was exhibited within the meaning of the statute.''

2. '' That if the executor had notice of the said claim, and that plaintiffs intended to exhibit the same for allowance to the Probate Court, and, in order to obtain time for the payment thereof and procure a postponement of the sale under the deed of trust, made the said agreements, and reported them to the Probate Court, and if plaintiffs, relying thereon, failed to present the claim and have it formally allowed until, etc., then the executor and his successor are estopped to set up such delay in bar of the claim.''

Three other instructions, much to the same effect, were asked by the plaintiffs. They were all refused, plaintiffs excepting; and the court declared the law to be, if the executor duly published notice of the grant of letters to him in December, 1868, the plaintiffs' claim was barred.

Two questions are presented by this record, the determination of both of which in the negative appears to be necessary to the affirmance of the judgment of the Circuit Court. These are:

1. Had Thomas A. Walker power to make a valid contract, and did he make a valid contract, for the extension of the time of payment of the principal note for $24,000, secured by the deed of trust in this case?

2. Was there, at any time, any such exhibition of the demand as prevented the bar of the statute?

1. The circumstances of this case disclose the utmost good faith, the fullest merits, and, we also think, legal diligence on the part of the guardians of the minor children of Mr. North in the original contracting, the exhibition, and the agreement for the extension, of the demand, which is shown by the note sued on in this action. It appears by the inventory of the executor of Isaac Walker that the deceased, a man of large possessions, was also a borrower to a large amount. A great proportion of his St. Louis

property was heavily incumbered, much of it by mortgages on which a high rate of interest was reserved. This note for $24,000 was apparently given for the full sum lent, and 8 per cent. interest only was reserved. Shortly after the death of Isaac Walker the claim was brought before the Probate Court, the executor waiving notice and admitting in the fullest manner the meritoriousness of the demand. The only reason why allowance was not formally made appears to have been that the court suggested that such an allowance was unnecessary, the note not being then due. It is true that the statute makes provision for the allowance of immature demands (1 Wag. Stat. 1872, p. 104, secs. 22 and 23), but the court appears not to have adverted to the last of the sections referred to ; and, as to the first, to have rebated the claim at the rate of 6 per cent. per annum would have been disadvantageous to the estate of Walker ;. besides which, it is pretty clear that there were no means. of present payment of the demand, had it been thus allowed at the March term, 1869. There seem to have been no such means in the hands of the executor, either in 1870 or 1871, for in each of these years the Probate Court was made acquainted with, and the judge seems to have sanctioned, the stipulation for the extension of the time ot payment of this note, made in February, 1870, and repeated or renewed in February, 1871. The Probate Court would hardly have given to this arrangement the tacit sanction which, we think, clearly appears, if there had been in the hands of the executor any money applicable to the payment of this demand. These extensions of the note were both made before the note became due. The first was made before the maturity of the security, as originally contemplated by the deceased ; the second before the expiration of the time for which it had been in the first place .extended. Both of the extensions were made avowedly for the purpose of tiding over a period of depression in the real estate market, and to avoid a sacrifice of the property by a sale in

1870 and 1871. It was supposed by the executor, who may be presumed to have exercised a sound discretion in the matter, that the depression in the price of real estate in this city (which, we may note as matter of history, dates from 1869) was but a temporary disturbance, and that a rally would be speedy and certain. No one who is mindful of the history of St. Louis from 1843 to 1869–70 would be apt to consider such a view injudicious. In that interval there had been, from causes the operation of which was more or less conspicuous, several periods during which a temporary check had been given to the value of real estate in this city and its neighborhood. In 1846, in 1849, in 1854, in 1857, in 1860–1–2–3–4 (a protracted time of gloom, caused first by the dread, and afterwards by the presence of, civil war), there had been these temporary checks. But from every such time of distress there had been a recovery which might be called triumphant. Not only had all the ground lost been regained, but a further advance—and generally in full proportion to the length of the period of stagnation—had been realized ; and in 1870 an authentic census demonstrated such a growth of St. Louis in population and industry during the preceding ten years, notwithstanding all the obstacles to her progress, as her most sanguine friends scarcely ventured to anticipate. Under these circumstances the executor was well justified, we think, in believing that the interests of the estate under his charge would be promoted by deferring a sale of the specific security given for the payment of the note we are considering.

Whether his discretion, however, was wisely or unwisely exercised, is not a matter which we are called on to review. The really important inquiry is whether he had power to exercise such discretion at all. If he had such a power, then whether he exercised it auspiciously or inauspiciously for the interest of estate in his hands, cannot affect the validity of his action. That he possesses the power to negotiate and stipulate for such an indulgence as was here given

does not seem open to dispute, since the decision of *Smarr* v. *McMaster's Admr.*, 35 Mo. 349. There is nothing in the later case of *Cape Girardeau County* v. *Harbison's Admr.*, 58 Mo. 90, that is not in full harmony with the earlier decision. An executor or administrator has no power to revive, by any word or deed of his, a demand against his decedent's estate which has been once barred. This is conceded and ruled in both cases. But that is not the point in the case at bar. At the time of making the agreements whereby the strong probability of great gain was secured to the estate of Isaac Walker, the validity and enforceability of the demand, the enforcement of which was temporarily suspended, were incontestable. There was no question of reviving an extinct claim. We are of opinion that the first question stated must be answered in the affirmative; and this disposes of the controversy. If the debt was continued so as to be non-enforceable against the estate of Isaac Walker until March 17, 1872, no laches can be imputed to the plaintiffs here. "*Contra non valentem agere nulla currit præscriptio*" is a maxim of law of undoubted application.

2. It may seem unnecessary for us to proceed to the consideration of the second question; but, if we had been compelled to decide the first inquiry differently, we should still be of opinion that the answer to the second would determine the reversal of this judgment. We are referred by appellants' counsel to the case of *Williamson* v. *Cooksey's Admr.*, 47 Mo. 299, and we are satisfied that it furnishes an answer to the present inquiry which is fatal to the affirmance of this judgment. This decision was made in a case arising under the law of 1855, of which the act of 1865 (the same as that to be found in Wagner's Statutes of 1872) is a literal reproduction. It is familiar to the profession that the old law under which the case of *Tevis* v. *Tevis' Admr.*, 23 Mo. 256, was decided, was materially different from the statute of 1855. Compare secs. 4 and 5, p. 91, Rev. Code 1845, and secs. 4, 5, and 6, p. 153,

Rev. Code 1855. Sec. 6 is perfectly new, and effects a total change in the law.

The judgment of the Circuit Court is reversed; and, there being apparently no reason to the contrary, final judgment for the appellants is given in this court. All the judges concur.