HENRY T. SPAULDING ET AL., Appellants, *v.* SIMON SUSS, ADMINISTRATOR, Respondent.

### December 11, 1877.

1. That a demand against an estate may be placed in the fifth class, the administrator must have plain and unmistakable notice thereof during the first year, which notice may be given by service of process upon the administrator, or by proving up the demand in legal form, or by serving notice upon the administrator in writing, according to the provisions of section 5, page 102, of Wagner's Statutes.

2. The provision of section 5 was enacted from motives of public policy, and an administrator has no right to waive its terms.

3. The doctrine of estoppel will not avail the claimant, though he was plainly misled by false and fraudulent statements of the administrator as to the terms of the law as to notice, inasmuch as he must prove actual notice within the first year, before the court can place the demand in the fifth class.

4. The time for proving claims begins to run from the date of publication of notice, and not from the date of letters of administration.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

NATHANIEL MÝERS, for appellants: Where the word " may " is used in a statute, its ordinary meaning will be presumed to be intended, unless it would manifestly defeat the object of the provision. — *Minor* v. *Mechanics' Bank of Alexandria,* 1 Pet. 64 ; *New York & Erie R. Co.* v. *Coburn,* 6 How. Pr. 224 ; *Centler* v. *Howard,* 9 Wis. 309 ; *Wheeler* v. *City of Chicago,* 24 Ill. 105 ; *Williamson* v. *Anthony,* 47 Mo. 300.    A strict compliance with the provisions of the statute is not indispensable to the exhibition of a claim, and the administrator may waive such exhibition. — *Gaines* v. *Bush,* 16 Ark. 647 ; *Borden* v. *Fowler,* 14 Ark. 471 ; *Madden* v. *State Bank,* 13 Ark. 276 ; *Grimes* v. *Booth,* 19 Ark. 224 ; *Goodrich* v. *Conrad,* 24 Iowa, 256 ; *Calanan* v. *McClure,* 47 Barb. 209 ; *Gansevoort* v. *Nelson,* 6 Hill, 389 ; *Johnson* v. *Corbett,* 11 Paige, 269 ; *Halbitt* v. *Branch Bank,* 12 Ala. 195 ; *Willis* v. *Miller,* 45 Ill. 35 ; *Little* v. *Little,* 36 N. H. 224 ; *Perry* v. *West's Admr.,* 40 Miss. 237 ; *Harrison* v. *Jones,* 33 Ala. 258 ; *Flinn* v. *Shackelford,* 42 Ala. 204 ; *Buckett* v. *Janiesot,* 2 Humph. 567 ; *Tibbetts* v. *Tilton,* 31 N. H. 273 ; *Triggs* v. *Moore,* 10 Texas, 197 ; *Kyle* v. *Kyle,* 15 Ohio, 20 ; *Leake* v. *Sunderland,* 25 Ark. 221 ; *Kincheloe* v. *Gorman,* 29 Mo. 421.    Where the administrator fraudulently keeps a creditor from exhibiting his claim within time, neither the administrator nor the estate can profit thereby. — *Clarkson* v. *Creely,* 40 Mo. 114 ; *Turner* v. *Turner,* 44 Mo. 539 ; *Marshall* v. *Buchman,* 35 Cal. 268 ; *Smith* v. *Newby,* 13 Mo. 164.    Estoppel *in pais.* — *Garn-*

*hart* v. *Finney*, 40 Mo. 462 ; *Chouteau* v. *Goodin*, 39 Mo.
250 ; *Newman* v. *Hook*, 37 Mo. 207 ; *Tyler* v. *Teff*, 14 Mo.
482 ; *McClellan* v. *Kennedy*, 8 Md. 230 ; *Fitz* v. *Brown*,
9 Barb. 17 ; *Preston* v. *Mann*, 25 Conn. 118 ; *Chapman* v.
*O'Brien*, 34 N. Y. 524 ; *Horn* v. *Cole*, 51 N. H. 287, 324 ;
*Liverson* v. *Walker*, 3 Texas, 93.

LEE & ADAMS, for respondent : The provisions of section
5, page 102, of Wagner's Statutes, in relation to the notice
to be given the administrator, is mandatory, and cannot be
waived. — *Miller* v. *Jannings*, 15 Mo. 265 ; *Nelson* v. *Russell*, 15 Mo. 356 ; *Bryan* v. *Mundy*, 14 Mo. 458 ; *Dorsey* v.
*Burns*, 5 Mo. 334 ; *Richardson* v. *Harrison*, 36 Mo. 96 ;
*North* v. *Walker*, 2 Mo. App. 174 ; *Smarr* v. *McMartin*,
35 Mo. 349.

BAKEWELL, J., delivered the opinion of the court.

The plaintiffs established a claim for $1,594.24 against
the estate of Abraham Suss, in the Probate Court of St.
Louis County ; the demand was placed by the court in the
sixth class. As the fifth class demands will not be paid in
full, this classification makes the demand worthless, and an
appeal was taken to the Circuit Court, where, on trial anew,
the claim was again placed in the sixth class ; and plaintiffs
appeal to this court.

The only witness examined was Philip Walter. It
appears from his testimony, and from the documentary
evidence in the case, consisting to a great extent of correspondence between Walter and the administrator, that Abraham Suss died insolvent on January 31, 1875. Letters of
administration were granted to his son, the defendant,
Simon, on February 4th, and notice of the letters was duly
published on February 11th. The year within which fifth
class claims must be proved expired on February 11, 1876,
and not on February 4, 1876, as counsel on either side inadvertently state. The law underwent a change in the revision of 1865, and the time for proving claims begins to run

now from the date of publication of notice, and not from the date of letters, as was formerly the case. Wag. Stat. 86, sec. 19.

The deceased was supposed to be in prosperous circumstances, and it was to the astonishment of his son, his family, and his friends that he was found to have died insolvent. He left a widow and several daughters, and it was decided by friends and relatives in St. Louis, creditors of the estate, to buy up claims against the estate as cheaply as possible. Walter, the witness, was a salesman of a New York house, creditors of deceased; he was an old personal and business friend of deceased, and had been largely instrumental in obtaining credit for Suss in New York. He was himself a creditor. The administrator at once opened a correspondence with Walter, suggesting such an arrangement as a compromise of the claims. Walter called together the New York creditors, eight or ten firms, representing an indebtedness of about $20,000, and they placed their claims in his hands, with authority to sell, compromise, establish, or collect their claims, as he might see fit. Walter shortly afterwards came on to St. Louis, for the purpose of attending to the interests of the New York claimants. On his arrival a meeting was held, at which the administrator, Walter, and several friends and relatives of the deceased were present. Walter stated at this business meeting that the New York claims which he had come on to represent would be asserted against the estate; and negotiations were at once entered into between the friends of deceased and Walter, with the knowledge of the administrator, for the purchase of these claims in the interest of the estate. These negotiations were continued for several days. The administrator, meanwhile, who had been the confidential book-keeper of deceased, went through the books with Walter, and drew off for him a statement showing the condition of the business at the time of his father's death; and also drew off, in his own hand, a list of debts due by the deceased, giving

the amounts and names; and Walter pointed out which claims he represented, amongst which was that of plaintiffs.

As to the correctness of the account of plaintiffs, and that it was due in all its particulars, there is no question, and there never was any question. It was for goods sold on November 21, 1874, and was entered, in all its items, by the administrator, at the date of the purchase, on the books of the deceased, and was pointed out as it stood on the books, by Walter, to the administrator, as a claim represented by him.

On the basis of the showing of the books of deceased, the friends of the family, with the assent of the administrator, offered twenty-five per cent for the claims represented by Walter, stating then, in the presence of the administrator, that the estate was insolvent, that the administrator had by law three years in which to pay demands, and that he would take the time allowed to settle up the estate. Walter declined to recommend the New York creditors to take less than thirty-seven and one-half per cent; but it was agreed that he should take the statements already furnished by the administrator and submit them to the creditors in New York, and see what could best be done. Walter then asked what had to be done to establish the claims against the estate if the negotiation fell through, and the administrator replied, "All you need do is to go before a proper officer and have the claims sworn to and sent to me, or to any one else, for allowance by the court." Walter then returned to New York, and a correspondence ensued in regard to the matter. On April 13, 1875, the administrator writes: "I have shown Mr. Cook and the Messrs. Meyer, as well as all the balance of my friends, your letter; and they say that, much as they would like to see the matter of these Eastern claims settled, still they do not feel justified in involving themselves to the extent of a settlement on the basis proposed by Mr. Whittemore, namely, forty per cent in three and six months, as they do not think I will be able

to pay that sum, even after my term of administration expires. They evidently are not in a hurry to have the matter closed up, because they say that, as I am not compelled to make a final settlement for three years, there is no sense nor reason in paying within six months more than the estate will realize altogether." On October 9th the administrator writes: " My brother-in-law, Mr. Meyer, of the firm of Meyer, Bannerman & Co., has told me that in order to assist me, and also to enable Eastern creditors to get a satisfactory settlement before the time of a final settlement of the estate, he would be willing to buy up all claims against the estate, provided he could get them at reasonable rates ; he would not name any specific percentage and said that if any of the creditors, or all of them, would correspond with him on the subject, he would answer them. This is all I could get out of him. My uncle will also assist me to the full extent of his abilities." On November 27, Walter writes to Suss, the administrator, asking why he has no answer to a former letter offering to sell for the New York creditors at thirty-seven and one-half per cent, at three, six, and nine months, and proceeds : " Now the creditors press me because the claims have to be filed, and they ordered me to write to a lawyer (I proposed Meyers) for instructions as to what is necessary, or what the court requires. I inform you of this, so you know what is going on, and to give you another chance to have it arranged without the meddlings of a lawyer." On the same day Walter writes, on behalf of the Eastern creditors, to Nathaniel Meyers, an attorney of St. Louis, asking whether he will take charge of the claims of the New York creditors in court, stating the amount of the claims and their number, and asking what the court requires to verify the claims ; whether itemized bills are necessary, whether a copy is sufficient in case of notes, and whether the affidavit must be made before a commissioner. The attorney answers on November 30th, stating his terms, and informing his corre-

spondent what facts the attorney must have in order to prepare and return for verification forms of affidavit as required by the Missouri statute. Nothing is said in these letters about exhibiting the claims, and Walter swears that he was never informed that it was necessary to exhibit them.

Other letters pass between Walter and Suss. Some delay is caused by the absence from the city of Mr. Meyer, the uncle of Suss; and, on December 13th, Suss advises Walter of his uncle's return, and says his uncle, after careful examination of the affairs of the estate, refuses to buy on the terms offered, as he would not get back, at the end of two years, the amount thus advanced. In this letter Suss says he will shortly be in New York, and will then give all information in regard to the state of affairs. Accordingly, early in January, 1876, the administrator called upon Walter in New York, when Walter asked him how long he had to establish his demands; and Suss replied he could do so any time within two years, in case the negotiations should fall through, and referred him to his brother-in-law, Meyer, of St. Louis, as one likely to purchase these claims. Mr. Walter then, on January 15th, wrote to this Mr. Jacob Meyer, asking him on what terms he would buy. This was at once answered by Isaac Meyer, a brother of Jacob, saying that his brother Jacob was absent from the city; and that, as Jacob was the one who had given the matter his personal attention, and would be back in a week, the matter would have prompt attention on his return. On January 26th Walter wrote again, saying that he wished immediate attention to the matter, as the creditors were pressing him. On January 31st Jacob Meyer wrote back that the offer must come from Walter, and requesting that it be made at once; and saying that the object of the Meyers in purchasing the claims was to free Suss from trouble, and that all they wished to make in the outlay was a fair interest. To this Walter replied, on February 4th, that he

had, with some trouble, at last.got some of the creditors to agree to take thirty-two and one-half per cent, and desired an answer by return mail, as, if it was accepted, he would have to see the other creditors, and his busy season was coming on. Meyer writes back on February 11th, the very day on which the first year of administration expired, a short note, saying: "The difference of opinion that exists as to the value of claims and price you propose to sell them to us is so 'wide from the mark' that we cannot entertain the proposition, nor make one."

The next month the administrator was ordered, on settlement, to pay forty-two per cent on fifth-class claims, aggregating nearly $89,000; of which $2,100 was in favor of the administrator, $3,000 in favor of Meyer Brothers. The cash on hand at this settlement was $42,500. Of the claims allowed, a considerable proportion were assigned to Meyer Brothers, and a large proportion assigned in blank.

It is claimed by appellants, first, that there was a sufficient exhibition of this demand to satisfy the statute; second, that the administrator has power to waive the formal exhibition of the demand, and that he did so in this case; third, that the administrator is estopped to say that the demand was not exhibited within the first year.

The statute places in the fifth class all demands "legally exhibited within one year from the granting of the first letters on the estate," and places in the sixth class "all demands thus exhibited after the end of one year, and within two years after letters granted." Wag. Stat 102, sec. 1. And provides (sec. 5) that "any person may exhibit his demand by serving on the executor or administrator a notice in writing, stating the amount and nature of his claim, with a copy of the instrument of writing, or account, upon which the claim is founded; and such claim shall be considered legally exhibited from the time of serving such notice." Sec. 7. "Every executor, etc., shall keep a list of such demands thus exhibited, classing them,

and make return thereof to the court at each settlement." The demand must be presented for allowance to the court within three years from the date of letters ; and the administrator must be brought into court by service of a copy of the demand and due notice, unless he voluntarily appears, or in writing waives this notice. Demands are paid in the order of their classification ; and, at every settlement, the court directs the money to be apportioned among the creditors, and no demand in one class can be paid until all previous classes are satisfied. Wag. Stat. 102, secs. 6, 7 ; p. 104, secs. 15, 16, 17 ; p. 105, sec. 29.

The exhibition to the administrator during the first year is for the mere purpose of classification, and has nothing whatever to do with the allowance of the demand, although the law provides (p. 102, sec. 4) that all actions com-. menced against an executor or administrator shall be considered legally exhibited from the time of service of process. Was it the intention of the law-maker to make the method of exhibiting demands indicated in the 5th section the exclusive method of legal exhibition of the claims for classification, and must its terms be strictly complied with?. The question is by no means free from difficulty ; and we. may.say, at the outset, that we are not aided in its determination by any decisions to which we have been referred in our own State, nor by those of other tribunals.

It is contended by counsel for appellant, in his carefully prepared brief, that the rulings in other States on the construction of similar statutes ·are in favor of the rule that the mode of exhibition to the administrator is not obligatory, and that the statutory provision is merely directory. But examination shows that the cases to which he refers are not in point, and they furnish no practical guide to the interpretation of the Missouri statute. In New Hampshire there is nothing whatever in the statute that indicates that a written notice to the· administrator is required. *Little* v. *Little*, 36 N. H. 224. In Illinois the statute on the sub-

ject is declared to be very imperfect, and prescribes that a claim may be exhibited by serving the administrator with a copy, by presenting him with the account, or by filing it in the Probate Court. *Wells* v. *Miller*, 45 Ill. 35. And in these States, as well as in Iowa, Alabama, Tennessee, Mississippi, Arkansas, Florida, and New York, the statutory exhibition to the administrator is not, as with us, an exhibition for the mere purpose of classification, wholly distinct from the notice required before proof of the claim, but is for the purpose of enabling the administrator to act advisedly in allowing or rejecting the demand; and, in case it is allowed, to give *data* for the list of claims he is required to keep and exhibit to the court. The administrator, in these States, acts in a judicial capacity; and it seems to be generally held that, the object of the statute being merely to enable the administrator to act advisedly in allowing or refusing the claim, where he has had a fair and convenient opportunity of examining the original, no violence is done to the spirit of the law in allowing him to waive, or in finding on slight evidence that he has waived, actual service of a copy (*Grimes* v. *Bush*, 16 Ark. 647), and that the claim will not be barred where there has been a sufficiently definite notice given of the claim, with an assertion that the estate was looked to for its payment (*Flinn* v. *Shackelford*, 42 Ala. 204), although the original was not presented as required by the letter of the law. In New York it is held that the creditor is not bound to exhibit the evidence of his claim, or to make oath to it, unless required by the executor, and a presentation by letter was there held sufficient. *Gansevoort* v. *Nelson*, 6 Hill, 389. And in Tennessee, as no particular form of demand is required by law, it is held that from a request for indulgence by the executor a demand upon the executor, within the meaning of the law, may be inferred. *Puckett* v. *James*, 2 Humph. 565. But it is plain that the rulings in these States, under statutes so widely different from our own, can be no guide to us. In

those States, as at common law, the administrator⁺may pay
claims without the previous judgment of a court, and no
creditor can sue the estate until the administrator has re-
fused to allow the demand.. With us the administrator can
allow no demand, and can reject none ; the scope of his du-
ties is different ; much less is left to his discretion ; and the
duties, both of the administrator and the creditor, are more
clearly limited by statute. On the other hand, we are re-
ferred to the decisions of our own State as indicating that
the true rule is a strict construction of this provision of the
administration law. But, in truth, none of the cases to
which we are referred seem to us to have any bearing, even
remote, upon the construction of this section of the admin-
istration law. *Simonds* v. *Pettibone*, 3 Mo. 330 ; *Dorsey* v.
*Burns*, 5 Mo. 334 ; *Bryan* v. *Mundy*, 14 Mo. 458 ; *Miller*
v. *Janney*, 15 Mo. 265 ; *Smarr* v. *McMaster*, 35 Mo. 349 ;
*Richardson* v. *Harrison*, 36 Mo. 96 ; *Burton* v. *Rutherford*,
49 Mo. 255. It is not necessary to examine critically these
cases ; our space forbids it ; and it is manifest on turning
to them, as we have done, that they afford no help in the
present investigation, because they do not turn upon even
kindred points.

The section under consideration uses the word "may."
But the word "may" is often construed "must," and is
always so construed where the Legislature meant to impose
a positive duty, and not to give a discretion. No general
rule can be laid down on this subject, except that that expo-
sition ought to be adopted, in this and all cases, which car-
ries into effect the true intent and meaning of the Legisla-
ture. *Minor* v. *Mechanics' Bank*, 7 Curt. 448. This is the
object of all construction of statutes ; and this must be
ascertained chiefly from the statute itself, and from the
whole statute, by giving effect to every clause.

It is quite clear that it is the intention of our law that the
administrator should have plain and unmistakable notice,
during the first year, of every claim which is to be placed

in the fifth class. This notice may be given by service of process upon the administrator, or by proving up the demand in legal form in the Probate Court during the first year, but if, for any reason, it is inconvenient to prove up the demand within the year, the class may be saved by complying with the provisions of section 5. This seems to us to be the meaning of the law, and the reason of the use of the word "may." The law provides no other means of exhibiting the claim so as to save the class than these. If this rule be modified by judicial interpretation, the whole symmetry of our administration law is endangered. Neither the administrator, the court, nor the creditors will be able to take a step any longer with certainty. Who shall say what private knowledge of the administrator, what casual talk on the street, perhaps forgotten, perhaps misunderstood, perhaps misrepresented, will save the class? The law requires a distribution at the end of every year; and when, at the end of the first or second year, the fifth class claims, as far as known to the court or the administrator, are paid in full, perhaps exhausting the estate, what security will there be that some claim will not be proved in the second or third year of administration, and the claimant demand payment in full on the ground of some casual conversation which the administrator has wholly forgotten? The rule prescribed in the 5th section is a plain and safe one. It is believed that it has hitherto been regarded in practice as absolutely necessary to serve notice in compliance with its terms where suit was not actually commenced during the first year, unless the claim was to fall into the sixth class. Certainly no prudent man, with the law before him, would neglect to serve the notice in strict accordance with its terms. In this particular case the rule works great hardship, and plaintiffs have, we think, been thrown off their guard; but it was their own imprudence not to employ, in good time, competent counsel; and if they chose to trust implicitly to the administrator, and the administrator wilfully or ignorantly

deceived them, we cannot help them. It is our duty to look, not to the hardships of this particular case, but to the general rule. It was, we think, the intention of the Legislature that the rule of notice should be definite and certain, and that as little as possible should be left to the discretion of the administrator, or to the recollection of witnesses, in a matter of this kind. And it is to the advantage of all concerned in the estate that the rule should be definite and fixed. After giving the subject careful consideration, we are satisfied that it is the true intent and meaning of the law that the method prescribed in section 5 should be the only mode of exhibiting a demand on which suit is not commenced within the first year, and that the provision is enacted from motives of public policy, and the administrator has no right to waive its terms; that there must be a substantial compliance with them, within the meaning of the statute; and that there can be no such compliance where no suit has been commenced, and no written notice of the claim whatever served upon the administrator.

The case of *North et al.* v. *Walker*, 2 Mo. App. 174, is not at all in conflict with this view. That case was decided upon the ground that the note in question was not provable against the estate during the first year of administration, having been renewed by the executor, under the sanction of the Probate Court; but that it was not barred by section 6, inasmuch as the executor, in open court, waived the service of any notice of the claim, and filed in the Probate Court a certified copy of the deed by which the note in question was secured. It has been expressly held in *Williamson* v. *Anthony*, 47 Mo. 299, that there may be a sufficient exhibition of a demand to save the two years' bar by limitation without a strict technical compliance with the exact provisions of section 2 of Wagner's Statutes (p. 102), where there is a substantial compliance with its requisitions, accepted as sufficient by the Probate Court.

passing upon the claim.   But neither in that case nor in the case of *North et al.* v. *Walker*, was the section in regard to exhibition for classification before the court at all ; and, in both cases, notice of the claim was given to the Probate Court, and the claimant was led by the declarations of the court, or by its acts, to believe that no further or other notice was required.

If, as we think, the administrator will not be permitted by any acts or verbal declarations to waive the service upon him of the written notice required by law to place a claim in the fifth class, it is clear that there can be no question of estoppel.   When the demand is allowed, the Probate Court must then classify it ; and if it places the claim in the fifth class, it must do this on evidence that the demand has been exhibited to the administrator during the first year, according to law.   The fact that the administrator was estopped to say that he had received no notice of the demand would avail the claimant nothing, in view of the fact that he must affirmatively show to the court, at the time of the allowance, that he had complied with the law. *Miller* v. *Janney*, 15 Mo. 265.

The judgment of the Circuit Court is affirmed.   All the judges concur.